1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11    GERALD KNIGHTEN,                          No.  2:15-CV-01751-TLN-CMK

12                      Plaintiff,

13           v.                                  **ORDER GRANTING DEFENDANT'S**
                                                 **MOTION TO DISMISS WITH LEAVE TO**
14    The City of Anderson; The City of          **AMEND**
      Anderson Police Department, Michael
15    Johnson in his official capacity as Chief of
      Police for the City of Anderson Police
16    Department; and Sean Miller, individually
      and in his official capacity as a Police
17    Officer with the City of Anderson Police
      Department.
18
                      Defendants.
19

20

21           This matter is before the Court on Defendants City of Anderson Police Department

22    ("City") and Chief of Police Michael Johnson's ("Chief Johnson") (together "Defendants")

23    Motion to Dismiss Plaintiff's Complaint.  (ECF No. 8)  Plaintiff Gerald Knighten ("Plaintiff")

24    filed an opposition to Defendants motion.  (ECF No. 11.)  Defendants filed a reply to Plaintiff's

25    opposition.  (ECF No. 16.)  The Court has carefully considered the briefing filed by both parties.

26    For the reasons below, Defendants Motion to Dismiss (ECF No. 8) is hereby GRANTED.

27

28

                                               1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the purported arrest of Plaintiff Knighten by Defendant Sergeant Sean Miller ("Miller"), who was off duty and not in uniform, in the parking lot of a grocery store in Redding.  (ECF No. 1 ¶ 8.)  Plaintiff was at all relevant times a 78 year-old man who resided in Redding in Shasta County, California.  (ECF No. 1 ¶ 3.)  Defendants Miller and Chief of Police Michael Johnson worked as police officers for Defendant City of Anderson Police Department.  (ECF No. 1 ¶ 5.)  The facts viewed in the light most favorable to Plaintiff are as follows.

On or about the morning of July 10, 2014, Plaintiff parked his car in the parking lot area of Holiday Market, located at 3315 Placer Street, Redding, California and went inside the market to shop.  (ECF No. 1 ¶ 7.)  After Plaintiff finished his shopping, he exited the market, approached his vehicle, and observed that a large pickup truck was parked very close to the driver's side of his car.  (ECF No. 1 ¶ 7.)  Plaintiff managed to open the driver's door of his car and get into the driver's seat.  (ECF No. 1 ¶ 7.)

While Plaintiff was sitting in the driver's seat, Defendant Miller emerged from behind the pickup truck and began to yell and curse at Plaintiff.  (ECF No. 1 ¶ 8.)  Miller, who was off duty and not in uniform, indicated to Plaintiff that he believed Plaintiff's car door had contacted and damaged Miller's truck when Plaintiff had opened the door of his car.  (ECF No. 1 ¶¶ 8–9.)  Miller displayed "threatening, aggressive, and frightening gestures" and approached Plaintiff's driver side door.  (ECF No. 1 ¶ 8.)  After reaching Plaintiff's driver side door, Miller suddenly reached through the window of Plaintiff's car, "grabbed Plaintiff's left arm, and applied a 'twist lock.'"[1]  (ECF No. 1 ¶ 8.)  Miller then violently pulled Plaintiff's body against the inside of the car door, forcibly removed Plaintiff from his car, slammed Plaintiff up against Miller's pickup truck, and told Plaintiff he was under arrest for a hit-and-run.  (ECF Nos. 1 ¶ 8.)  Thereafter, Miller restrained Plaintiff and prevented him from moving freely for over two hours.  (ECF No. 1 ¶ 9.)

Redding Police Officer Edward Gilmette responded to the scene.  (ECF No. 1 ¶ 23.)  During Officer Gilmette's investigation of the matter, Miller called Chief Johnson of Anderson

---

[1]    A twist lock is a maneuver that police officers use as an arrest control technique.  The technique involves the officer grabbing the individual by the hand and twisting to tighten up the arm.  If an individual begins to fight or resist, the officer then twists the arm further.

City.  (ECF No. 1 ¶ 23.)  Officer Gilmette asked to speak with Chief Johnson.  (ECF No. 1 ¶ 23.)  During their conversation, Chief Johnson told Officer Gilmette to only conduct an informational report and to forward the report to the City.  (ECF No. 1 ¶ 23.)  Chief Johnson also stated that a police officer from the City would respond to the location and take over the investigation.  (ECF No. 1 ¶ 23.)  Thereafter, Anderson City's Lieutenant Harpham arrived at the scene.  (ECF No. 1 ¶ 23.)  Officer Gilmette explained the incident to Lieutenant Harpham and forwarded the informational police report to the City.  (ECF No. 1 ¶ 23.)

Sometime thereafter, the City took over the investigation.  (ECF No. 1 ¶ 24.)  Although the Complaint does not provide an exact date, sometime after the incident the City of Anderson Police Department's Chief Johnson determined that Miller had violated "at least three of the [City's] policies and procedures" during his confrontation with Plaintiff.  (ECF No. 1 ¶ 25(c).)  Despite this finding, Miller is still employed as a police officer with the City, maintains the position as the primary training officer for the policies and procedures of the department, and is "one of the highest paid and highest ranked officers in the force."  (ECF No. 1 ¶ 25(b).)

On August 18, 2015, Plaintiff filed a Complaint against Miller, the City, and Chief Johnson in his official capacity.  (ECF No. 1.)  Pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, the Complaint alleges that all three Defendants violated the following constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1988: (1) freedom from the use of excessive force; (2) freedom from the deprivation of liberty without the due process of law; (3) freedom from summary punishment; (4) security of person; (5) equal protection of the laws; and (6) freedom from cruel and unusual punishment.  (ECF No. 1 ¶¶ 2, 18.)  In response, on September 17, 2015, the City and Chief Johnson filed a Motion to Dismiss claiming Plaintiff alleged insufficient facts to state a claim under *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978).  (ECF No. 8 at 2.)  On October 22, 2015, Plaintiff filed an opposition to Defendants motion.  (ECF No. 11.)  On October 29, 2015, Defendants filed a reply.  (ECF No. 16.)  The parties stipulated that Defendant Miller shall have until 30 days after the Court rules on the pending Motion to Dismiss to answer or otherwise respond to Plaintiff's Complaint.  (ECF

1    No. 19.)

2        **II.    STANDARD OF LAW**

3        A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

4    12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

5    2001).  Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

6    statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

7    U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

8    defendant fair notice of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic*

9    *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

10   pleading standard relies on liberal discovery rules and summary judgment motions to define

11   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

12   534 U.S. 506, 512 (2002).

13       On a motion to dismiss, the factual allegations of the complaint must be accepted

14   as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of

15   every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.

16   *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

17   allege "'specific facts' beyond those necessary to state his claim and the grounds showing

18   entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the

19   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

20   defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

21   544, 556 (2007)).

22       Nevertheless, a court "need not assume the truth of legal conclusions cast in the

23   form of factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th

24   Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

25   an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

26   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

27   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

28

4

1   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

2   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

3   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

4   been alleged[.]"  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

5   459 U.S. 519, 526 (1983).

6        Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

7   facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting

8   *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

9   the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While

10  the plausibility requirement is not akin to a probability requirement, it demands more than "a

11  sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a

12  context-specific task that requires the reviewing court to draw on its judicial experience and

13  common sense."  *Id.* at 679.

14       In ruling upon a motion to dismiss, the court may consider only the complaint, any

15  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

16  Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

17  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

18  1998).

19       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

20  amend even if no request to amend the pleading was made, unless it determines that the pleading

21  could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

22  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

23  *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

24  denying leave to amend when amendment would be futile).  Although a district court should

25  freely give leave to amend when justice so requires under Federal Rule of Civil Procedure

26  15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has

27  previously amended its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713

28

1  F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th

2  Cir. 2004)).

3      **III.   ANALYSIS**

4      Although it is unclear from Plaintiff's Complaint, it appears that Plaintiff is bringing five

5  separate constitutional claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1988, alleging *Monell*

6  liability against the City and Chief Johnson for: (1) their unconstitutional policy and custom of

7  subjecting citizens to unreasonable use of force; (2) their failure to adequately train, supervise,

8  and control deputies in the art of law enforcement; and (3) condoning and encouraging officers to

9  violate the rights of persons such as Plaintiff with impunity through ratification.  (ECF No. 1 ¶ 1.)

10 Plaintiff generally alleges that through these acts, Defendants violated his First, Fourth, Fifth,

11 Eighth, and Fourteenth Amendment rights.[2]  (ECF No. 1 ¶ 2.)

12     Defendants contend that none of Plaintiff's federal claims against the City are cognizable,

13 because Plaintiff fails to sufficiently plead factual allegations that support a claim for a

14 custom/policy, failure to train, or an official's act of ratification under *Monell* liability.  (ECF No.

15 8-1 at 4.)  Defendants assert that Plaintiff's Eighth Amendment claim to be free from "summary

16 punishment" and "cruel and unusual punishment" fails to state a claim.  (ECF No. 8 at 2.)

17 Defendants also seek dismissal of all claims against Chief Johnson in his official capacity,

18 because they are redundant.  (ECF No. 8 at 2.)  Finally, Defendants contend that Plaintiff is

19 barred from seeking punitive damages against Chief Johnson in his official capacity.  (ECF No. 8

20 at 2.)

21     Plaintiff counters that the factual allegations are sufficient to support *Monell* liability

22

23 [2]      It is also unclear from Plaintiff's Complaint what state law claims he alleges against the City and Chief Johnson.  (ECF No. 1 ¶ 30.)  The Complaint seems to allege a list of state law claims against all parties in the instant
24 matter including: assault, battery, false imprisonment, false arrest, kidnapping, and elder abuse.  (ECF No. 1 ¶ 30.) To allege these causes of action, Plaintiff merely incorporates the factual allegations from prior paragraphs in his
25 Complaint, and thus it is not clear what conduct gives rise to each cause of action, or which defendant Plaintiff is claiming violated each state claim.  However, the Court is not in a position to dismiss Plaintiff's state law claims,
26 because Defendants have not offered any argument stating that the state claims are insufficiently plead.  (ECF Nos. 8 & 16.)  By granting Plaintiff the opportunity to amend his complaint, the Court advises Plaintiff to clearly identify the state rights violated by each Defendant and allege how each named Defendant was involved with the violation of
27 Plaintiff's rights in compliance with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8(a) (a claim must identify the defendants, state the relief sought, and give fair notice of the claims to the defendants).  Accordingly, the
28 Court will refrain from addressing Plaintiff's state law claims at this time.

because: (1) the City had an established policy that inflicted an unconstitutional injury; (2) its failure to train its police officers amounted to a policy of deliberate indifference; and (3) the City and Chief Johnson ratified this policy by not doing anything that would deter Miller or any other officer from violating a person's constitutional rights.  (ECF No. 11 at 7–12.)  Moreover, Plaintiff counters that the Complaint sufficiently alleges an Eighth Amendment violation because Miller inflicted unnecessary and wanton infliction of pain upon Plaintiff.  (ECF No. 11 at 12.)  Finally, Plaintiff counters that punitive damages are permissible in certain civil rights actions under section 1983.  (ECF No. 11 at 12.)  Therefore, Plaintiff contends that Defendants' Motion to Dismiss should be denied in accordance with the standard governing Rule 12(b)(6).  (ECF No. 11 at 7–12.)

The Court addresses Defendants' Motion to Dismiss Plaintiff's section 1983 claims in three parts: (1) Plaintiff's *Monell* liability claims against the City; (2) Plaintiff's Eighth Amendment claim; and (3) Plaintiff's claims against Chief Johnson in his official capacity, including his request for punitive damages.

### A. *Monell* Liability Against the City

Municipalities cannot be held vicariously liable for the unconstitutional acts of their employees based solely on a respondeat superior theory.  *Monell*, 436 U.S. at 691.  Rather, municipalities are only "responsible for their own illegal acts."  *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).  Specifically, a municipality may be held liable only where it individually causes a constitutional violation through "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent them."  *C.B. Sonora v. School Dist.*, 691 F. Supp. 2d 1170, 1185 (2010).  A plaintiff may premise municipal liability on: (1) a longstanding practice or custom, which constitutes the 'standard operating procedure' of the local government entity; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct.  *Clouthier v. Cnty. Of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).  A "policy" is a "deliberate

choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In light of *Iqbal*, the federal pleading rules for municipal liability claims must identify the policy/custom, explain how the specific policy/custom was deficient, how the policy/custom caused plaintiff harm, and how the policy/custom amounted to deliberate indifference (i.e. how the deficiency was obvious and the constitutional injury was likely to occur). *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009).

Generally, the Complaint alleges that Defendants are liable under *Monell* for an unconstitutional policy, the failure to train, and ratification. Specifically, Plaintiff alleges Defendants: (1) had a policy of assuming investigations from other jurisdictions where those investigations involve the City to thwart public attention and protect the officers from any alleged wrongdoing and custom, and they had a practice of "not enforcing . . . existing policies and procedures against [the City] officers who violate those policies and procedures"; (2) failed to adequately train Miller in the arts of law enforcement given that he was the primary training officer; and (3) ratified Miller's conduct by not enforcing adequate discipline. (ECF No. 1 ¶ 25(a)–(c).) Defendants contend that Plaintiff failed to allege sufficient facts to support any of these theories. (ECF No. 8-1 at 4.)

### 1.    Adopted Custom or Policy

To sufficiently allege that the government entity had adopted an unconstitutional custom or policy, a plaintiff must prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local governmental entity. *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Defendants contend that Plaintiff fails to

show "how the specific policy/custom was deficient, how the policy/custom caused plaintiff harm, and how the policy/custom amounted to deliberate indifference." (ECF Nos. 8-1 at 5–6.) Further, Defendants maintain that Plaintiff's single example of an alleged incident of excessive force is insufficient to allege that the City adopted a custom or policy. (ECF No. 8-1 at 6.) Plaintiff responds that he is not required to allege such specific facts at the pleading stage. (ECF No. 11 at 5.) Additionally, Plaintiff states that he cannot provide prior instances of Miller's misconduct "because the City . . . refused to provide that information to Plaintiff." (ECF No. 11 at 5.)[3]

Though plaintiffs need not prove their case at this stage, "conclusory, 'threadbare' allegations that merely recite the elements of a cause of action will not defeat a motion to dismiss." *Young*, 687 F. Supp. 2d at 1149. Here, the Complaint alleges that the City administered unconstitutional policies by "subjecting citizens to the unreasonable use of force against their persons and [s]electing, retaining, and assigning deputies with demonstrable propensities for excessive force, violence, and other misconduct." (ECF No. 1 ¶ 14.) Additionally, the "custom and practice of assuming investigations from other jurisdictional policing agencies, where those investigations involve the City to thwart public attention and to protect the officers accused in wrongdoing" is unconstitutional. (ECF No. 1 ¶ 14(b).) Plaintiff has alleged the existence of a policy but does not provide any factual basis for the existence of

---

[3]        In support of his argument, Plaintiff requests the Court to take judicial notice of a letter sent by the City, addressed to Plaintiff's counsel, saying that it will not provide information regarding the internal investigation of Miller. (ECF No. 11 at 13.) Plaintiff also requests the Court to take judicial notice of the police report drafted by Redding Police Officer Gilmette. (ECF No. 11 at 13.) The police report includes statements by witnesses who saw the incident between Miller and Plaintiff, as well as statements by Miller and Officer Gilmette. *Id.* Defendants contend that the "two exhibits submitted by Plaintiff are not matters of public record or attached to or relied upon in Plaintiff's Complaint." (ECF No. 16 at 10.)

        A court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or capable of accurate and ready determination by resort to "sources whose accuracy cannot be reasonably questioned." *Id.* Here, Plaintiff is requesting the Court to take notice for the purpose of supporting his claims that the City had an unconstitutional custom or policy, and that its custom or policy was a longstanding practice. (ECF No. 11 at 13.) The facts contained in both the letter and the police report do not fit within the parameters of Rule 201, because they are subject to reasonable dispute between the parties in this case. Fed. R. Evid. 201(b). Additionally, although the police report comes from the Redding Police Department, which is an administrative body and the report is a public record, the Court does not presume that its contents are proper for judicial notice. *See U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003); (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985) (holding that the existence and content of a police report are not properly the subject of judicial notice).) Accordingly, it would be improper for this Court to take judicial notice of the attached documents to Plaintiff's opposition.

1   such a policy beyond the events that occurred between Plaintiff and Miller.  One instance alone

2   cannot support the existence of a policy.  *Trevino v. Gates*, 99 F.3d 911, 919 (E.D. Cal. 2016)

3   ("Liability for improper custom may not be predicated on isolated or sporadic incidents.").

4   Moreover, no factual allegation in the Complaint supports Plaintiff's assertion that the City was

5   the "moving force" behind Miller's conduct.  *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)

6   (the entity's "policy or custom" must have played a part in the violation of federal law).

7   Consequently, Plaintiff's claims lack any factual allegations that would separate them from the

8   formulaic recitation of the elements of the claim.  *Twombly*, 550 U.S. at 555.

9           Although it is rare that "a plaintiff will have access to (or personal knowledge of) specific

10   details regarding the existence or absence of internal policies or training procedures prior to

11   discovery," Plaintiff still has the burden to allege that the custom amounts to a pattern of

12   constitutional violations.  *Creer v. Vallejo*, No. 2:14–cv–1428 JAM, 2015 WL 3795027, *5 (E.D.

13   Cal. June 17, 2015) (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–43

14   (S.D. Tex. 2011)); *see also Iqbal,* 556 U.S. at 686 (failing to meet the requirements under Rule 8

15   prevents the discovery process from commencing).  Despite Plaintiff's contention that he cannot

16   provide prior instances of misconduct "because the City . . .  refused to provide that information",

17   Plaintiff still has the burden to sufficiently plead a claim so that Defendants are on notice of the

18   claims brought against them.  Here, Plaintiff has not alleged any other instances that would

19   support the claim that the City has a policy, practice, or custom of using excessive force and

20   hiring officers with a propensity to use excessive force.  *See Hunter v. Cnty. of Sacramento*, 652

21   F.3d 1225, 1233 (9th Cir. 2011) ("a custom or practice can be inferred from widespread practices

22   or evidence of repeated constitutional violations").  Therefore, Defendants' Motion to Dismiss

23   Plaintiff's claim for *Monell* liability through an adopted custom or policy is GRANTED with

24   leave to amend.

25                   2.       *Failure to hire, train, or supervise*

26           Complete inadequacy of training may amount to a policy giving rise to *Monell*

27   Liability.  However, "adequately trained officers occasionally make mistakes; the fact that they

28

do says little about the training program or the legal basis for holding the city liable." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).  Consequently, a claim for inadequate training under *Monell* is only sufficient "where that city's failure to train reflects deliberate indifference to the rights of persons with whom the police come in contact," and that deliberate indifference was the moving force of the violation of the plaintiff's federally protected right.  *Id.* at 388.  "[O]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a 'policy or custom' that is actionable under § 1983."  *Id.* at 389.

For Plaintiff to set forth a claim alleging a failure to train, he must demonstrate specific training deficiencies that amounted to a deprivation of a constitutional right and either: (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations, e.g. training on the constitutional limits on a police officer's use of deadly force.  *Canton*, 489 U.S. at 390–91.

Plaintiff alleges that the City's following training procedures are deficient: (1) "protecting individuals from assault"; (2) "taking into custody . . . elderly persons such as Plaintiff without injuring them"; (3) "failing to adequately discipline officers involved in misconduct"; (4) making it so that acts of misconduct "will not adversely affect their opportunities for promotion and other employment benefits"; (5) "allowing officers to use . . . their positions as police officers to gain advantages in private disputes"; and (6) "failing to train officers on how to conduct themselves while off duty and/or in plain clothes."  (ECF No. 1 ¶¶ 1, 14–15, 22–23, 25–26.)  Plaintiff's Complaint does not clarify which constitutional right each alleged training procedure violates, nor does it explain how each training procedure is deficient.  *See Young*, 687 F. Supp. 2d at 1149 (requiring a plaintiff to demonstrate specific training deficiencies).  Additionally, while the Complaint alleges that Defendants acted with deliberate indifference by refusing to protect Plaintiff's rights, it does not explain how their policies amount to deliberate indifference, i.e. explain how the deficiency involved was obvious and that the

1   municipality could have avoided the constitutional injury had the government entity properly

2   trained those officers.  *See Flores v. County of Los Angeles*, 758 F.3d 1154, 1157 n.8 (9th Cir.

3   2014).  Simply alleging that these practices are deficient and inadequate is conclusory and does

4   not support a plausible claim.

5          Finally, the Complaint does not allege specific multiple instances of constitutional

6   violations by officers within the City.  Instead, the Complaint alleges that because Miller is the

7   primary training officer and supervisor and "cannot follow or does not know the City's policies

8   and procedures," the City's "failure to train its officers is obvious."  (ECF No. 1 ¶ 25(c); ECF

9   No. 11 at 10.)  In light of the City's training policy and the fact that Miller's actions were in

10  contradiction of its policy, the Court cannot reasonably infer that the City failed to train its

11  officers on how an officer should behave while off duty, how to take an elderly person into

12  custody, or how to protect individuals from assault based solely on Miller's alleged conduct.  *Id.;*

13  *see also Bryan Cnty.*, 520 U.S. at 409 (1997) (A failure to train that is obviously necessary to

14  avoid violating a constitutional right must be a "highly predictable consequence.")  As such, the

15  Court finds that Plaintiff has not alleged sufficient facts to support a claim for failure to train

16  under *Monell* liability.  Therefore, Defendants Motion to Dismiss as to Plaintiff's failure to train

17  claim is GRANTED with leave to amend.

18         *3.*    *Ratification*

19         A plaintiff may claim *Monell* liability where an "official with final policy-making

20  authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it."

21  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  Ratification "and thus the

22  existence of a de facto policy or custom, can be shown by a municipality's post-event conduct,

23  including its conduct in an investigation of the incident."  *Henry v. Cnty. of Shasta*, 132 F.3d

24  512, 518 (9th Cir. 1997).  However, a policymaker's "knowledge of an unconstitutional act does

25  not, by itself, constitute ratification."  *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781 (9th

26  Cir. 1997).  Moreover, "a policymaker's mere refusal to overrule a subordinate's completed act

27  does not constitute approval."  *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  Rather,

28

1    ratification requires the authorized policymaker to make a "conscious, affirmative choice."

2    *Gillette*, 979 F.2d at 1347.  After proving ratification occurred, a plaintiff must also show that the

3    ratification was (1) the cause in fact, and (2) the proximate cause of the constitutional

4    deprivation.  *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir.

5    1981)

6         The Complaint alleges that Defendants "permitted, encouraged, tolerated and ratified a

7    pattern and practice of allowing officers to subject citizens to unreasonable uses of force with

8    impunity."  (ECF No. 1 ¶ 23.)  Specifically, the City went outside of its jurisdiction and assumed

9    the investigation from the City of Redding Police so as to avoid adversely affecting Miller's

10   "salary, position in the department, opportunities for promotion and other employment benefits."

11   (ECF No. 1 ¶ 24.)  In response, Defendants contend Plaintiff's allegations fail to support *Monell*

12   ratification for two reasons: (1) Plaintiff did not allege that Defendants ratified a continuing

13   violation and thus Plaintiff fails to show that Chief Johnson's post-event investigation of Miller's

14   conduct caused Plaintiff's deprivation (ECF No. 8-1 at 9); and (2) Chief Johnson's alleged

15   failure to adequately discipline Miller is not sufficient for a ratification claim.  (ECF No. 8-1 at

16   9.)

17        Here, Plaintiff's single alleged incident does not eradicate his ratification claim.  (ECF

18   No. 1 ¶ 23); *see also Christie*, 176 F.3d at 1239 (a plaintiff is not required to allege multiple

19   incidents of deprivation in order to sufficiently plead ratification).  However, Chief Johnson's

20   decision to not terminate Miller is not enough to allege that he made a conscious affirmative

21   choice to approve Miller's actions and adopt them as official policies.  *See Fonseca v. City of*

22   *Fresno*, No. 1:10–cv–00147 LJO DLB, 2012 WL 44041, *12 (E.D. Cal. 2012) (citing *Santiago*

23   *v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989)) ("As we have indicated before, we cannot hold that

24   the failure of a police department to discipline a specific instance is an adequate basis for

25   municipal liability under *Monell*.").  In fact, Plaintiff admits that Chief Johnson found that Miller

26   violated at least three of the City's policies and procedures.  (ECF No. 1 ¶ 25(b).)  Accordingly,

27   the fact that Chief Johnson determined Miller had violated the City's policies, even if there was

28

1   no associated discipline, does not support the allegation that Defendants had a "practice of

2   allowing officers to subject citizens to unreasonable uses of force with impunity."  (ECF No. 1 ¶

3   23.)  Finally, because the Court finds no ratification, the Court finds that it is not necessary to

4   discuss whether the alleged ratification was a cause in fact and proximate cause of the

5   constitutional deprivation.

6           In sum, Plaintiff's allegations do not sufficiently allege *Monell* liability through an

7   unconstitutional policy or custom, the failure to train its officers, or ratification, and the

8   Defendants' Motion to Dismiss as to these claims is GRANTED with leave to amend.

9           **B.  Eighth Amendment Allegation[4]**

10          The United States Supreme Court has stated that the Eighth Amendment, applicable to the

11  states through the Fourteenth Amendment, "prohibits the infliction of cruel and unusual

12  punishments on those convicted of crimes."  *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991).  That

13  is, the Eight Amendment only comes into play after there has been a formal adjudication of guilt,

14  through a criminal prosecution, in accordance with due process of law.  *See City of Revere v.*

15  *Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983).

16          Defendants contend that Plaintiff's Eighth Amendment allegation is insufficient to state a

17  claim, because this amendment only governs cruel and unusual punishment or summary

18  punishment following a conviction.  (ECF No. 8-1 at 11.)  Plaintiff argues that his Eighth

19  Amendment claim is sufficient, because "Plaintiff Knighten was held by Miller, and unable to

20  move, for a period of time exceeding two hours.  He was placed in a twist-lock, and pulled out of

21  his car and slammed up against Miller's truck.  Miller punished [Plaintiff] for the alleged chip

22  made in Miller's truck, by inflicting 'unnecessary and wanton infliction of pain' to punish him."

23  (ECF No. 11 at 12.)  However, because Plaintiff has not alleged that he was subject to a formal

24  adjudication of guilt at the time of the alleged constitutional deprivation, the Eighth Amendment

25  is inapplicable to the instant matter.

26          Therefore, based on the facts alleged in the Complaint, Plaintiff has insufficiently plead a

27  ───────────────

   [4]      Although the Court finds that all *Monell* liability claims are dismissed against Defendants and thus makes
28  Defendants contentions against the Eighth Amendment claim moot, the Court addresses Defendants' argument that
   the Eighth Amendment claim is insufficient in anticipation of Plaintiff's amended complaint.

1    claim for an Eight Amendment violation and Defendants' Motion to Dismiss this claim is

2    GRANTED with leave to amend.

3            **C.  Liability Against Chief Johnson**

4            A claim against a state or municipal official in his official capacity is treated as a claim

5    against the entity itself.  *Brandon v. Holt*, 469 U.S. 464, 471–73 (1985).  The Supreme Court has

6    held that an official capacity claim is merely "another way of pleading an action against an entity

7    of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Morever,

8    "[s]ection 1983 claims against government officials in their official capacities are really suits

9    against the governmental employer because the employer must pay any damages awarded."

10   *Butler v. Elle,* 281 F.3d 1014, 1023 n.8 (9th Cir. 2002).  Consequently, when both an officer in

11   his official capacity and the local government entity are named in a lawsuit, it is appropriate to

12   dismiss the claims against the defendant in his official capacity as redundant.  *Fontana v. Alpine*

13   *County*, 750 F. Supp. 2d 1148, 1154 (E.D. Cal. 2010).  Defendants contend that Chief Johnson's

14   presence as a defendant in his official capacity is redundant of Defendant City, because the two

15   are legally synonymous.  (ECF No. 8-1 at 12.)  Plaintiff did not address this argument in his

16   opposition.  (ECF No. 11.)  Therefore, the Court finds it appropriate to dismiss Plaintiff's claims

17   against Chief Johnson.

18           Defendant also argues that Plaintiff's Complaint fails to state a claim for supervisory

19   liability, (ECF No. 8-1 at 12) and that Plaintiff's request for punitive damages against Chief

20   Johnson is barred.  (ECF No. 8-1 at 15.)  Because the Court finds that all claims against Chief

21   Johnson are dismissed as redundant, the Court refrains from addressing the alternative grounds

22   for dismissal presented by Defendants.

23           **IV.    CONCLUSION**

24           For the reasons set forth above, the Court hereby GRANTS Defendants' Motion to

25   Dismiss without prejudice.  Plaintiff is granted thirty days from the date of entry of this order to

26   file an amended complaint that complies with the requirements of the Federal Rules of Civil

27   Procedure, and the Local Rules of Practice.  *Noll v. Carlson*, 809 F.2d 1446, 1448–49 (9th Cir.

28

1   1987).

2

3   IT IS SO ORDERED.

4

5   Dated: March 30, 2016

6                                                        _____
7                                                        Troy L. Nunley
                                                         United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16